UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
                                                  :
In re:                                            :
                                                  :
RANU REALTY CORPORATION,                          :
                                                  :
                                Debtor,           :
                                                  :
---------------------------------------------------------X

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: FEB 15 2013

No. 12 Misc. 409 (RA)

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

On December 21, 2012, the Bankruptcy Court denied Appellant Viktoriya Zavelina's motion to reconsider the approval of a sale of property located at 2035 Benedict Avenue, Bronx, New York (the "Property"). On the same date, Appellant, by proposed order to show cause, moved for a temporary restraining order and preliminary injunction to stay the consummation of the sale of the Property pending an appeal of the Bankruptcy Court's order. The Honorable Andrew L. Carter, Jr., sitting on Part One duty, denied Appellant's application for a temporary restraining order and issued an Order requiring Appellees in this action, Deborah J. Piazza, the Chapter 7 Trustee ("Trustee"), and JG Capital & Associates LLC ("JG Capital") (collectively, "Appellees"), to show cause as to why the Court should not enter a preliminary injunction. A hearing was held before the Court on January 15, 2013. For the following reasons, Appellant's motion for a preliminary injunction is denied.

I.      Background

Ranu Realty Corporation ("Ranu"), the debtor in the underlying bankruptcy proceeding, was the title owner of the Property, which was subject to a mortgage lien owned by Lenders Capital, LLC ("Lenders Capital").[1] On or around March 7, 2008, Lenders Capital commenced

---

[1] Lenders Capital, LLC is JG Capital's assignor. (Appellees' Opp'n 3.)

foreclosure proceedings against the Property in New York Supreme Court, Bronx County. Lenders Capital, LLC v. Ranu Realty Corp., Index No. 380425/2008 (N.Y. Sup. Ct.) ("Lender's Capital"). (See also Appellees' Opp'n 3.)  On August 3, 2010, a judgment of foreclosure was entered by the clerk's office. (Appellant's Ex. C.)[2]  A public sale was held on November 22, 2010, at which Appellant purchased the property for the sum of $650,001.00.  (Appellant's Ex. D.)

Between November 18, 2010 and December 13, 2010, the debtor Ranu submitted to the New York Supreme Court three orders to show cause seeking to stay the auction sale. (Appellants' Mem. ¶¶ 26-31; Appellees' Opp'n 3.)  The first two orders to show cause were never entered due to procedural errors. (Appellant's Mem. ¶¶ 26-29.)  Before the New York Supreme Court ruled on the third order to show cause, on January 28, 2011, Ranu filed for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Southern District of New York.[3]  In re Ranu Realty Corp., 11-10286 (SCC), Dkt. No. 1 (Bankr. S.D.N.Y. Jan. 28, 2011).  Thereafter, on April 1, 2011, the New York Supreme Court granted the third order to show cause and declared the auction sale a nullity on the grounds that the stay of the auction sale was in effect as of the date of the first order to show cause. (Appellant's Mem. ¶ 31; Appellee's Opp'n 3.)

Upon the filing of Ranu's bankruptcy petition, the state court proceeding, Lender's Capital, was automatically stayed pursuant to 11 U.S.C. § 362(a).  On May 25, 2011, upon motion by Appellant, the Bankruptcy Court modified the automatic stay pursuant to 11 U.S.C.

---

[2] Unless otherwise noted, all exhibits are referred to as "Appellant's Ex. __."  To the extent that a citation requires additional explanation or refers to a document from another court docket, a more developed citation is provided. The Court takes judicial notice of public filings in the Bankruptcy Court. See Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc., 969 F.2d 1384, 1388 (2d Cir. 1992).

[3] On August 4, 2011, the bankruptcy petition was converted to a Chapter 7 bankruptcy. (Appellees' Opp'n 4.)

§ 362(d) as follows:

> [T]o the limited extent of allowing [Appellant] to file and proceed with an appeal of the Order of the Supreme Court of the State of New York, County of Bronx (Hon. Stanley Green), dated April 1, 2011; provided, however, that this Court has made no determination of the merits of such appeal in granting this relief.

(Appellant's Ex. E.)   Accordingly, Appellant proceeded with an appeal in the Appellate Division, First Department.[4]  During the course of her appeal, Appellant moved in the Appellate Division for a stay of the sale of the Property pending the adjudication of the appeal, which the appellate court granted on August 11, 2011.  See Lenders Capital, 2011 WL 3503461, 2011 N.Y. Slip Op. 80657(U) (N.Y. App. Div. Aug. 11, 2011).  When the Bankruptcy Court learned of this stay order, it informed Appellant's counsel that its modification of the automatic stay to pursue an appeal did not also permit leave to obtain a stay in the Appellate Division.  (In re Ranu Realty Corp., Dkt. No. 85 (Bankr. Hr'g Tr., Feb. 1, 2012 ("Feb. 1 Hr'g Tr.")), 21:7-24 ("You asked me to lift the stay for the purpose of pursuing the Appeal.  That was granted.  No one asked to lift the automatic stay for the purpose of staying the sale of the Property. . . . A request for a stay is an entirely separate matter. . . . Leave had to be sought from the Bankruptcy Court in order to get that stay."); see also Appellant's Ex. A (Bankr. Hr'g Tr., Dec. 14, 2012 ("Dec. 14 Hr'g Tr.")), 7:18-8:6 ("[The Appellate Division's stay order] was a clear violation of the automatic stay.").)  On March 6, 2012, upon motion by Appellant, the Appellate Division vacated its stay order. Lenders Capital, 2012 WL 695194, 2012 N.Y. Slip Op. 66321(U) (N.Y. App. Div. Mar. 6, 2012).

During the pendency of the state court appeal, Appellees proceeded with the sale of the Property in the Bankruptcy Court.  After months of negotiations and appearances before the

---

[4] Appellees assert that they were not provided with any notices of the ongoing proceedings in the Appellate Division.  (Appellees' Opp'n 4.)

Bankruptcy Court, on June 27, 2012, the Bankruptcy Court (i) approved JG Capital's offer to purchase the Property pursuant to a contract of sale agreed upon between Appellees, (ii) scheduled an auction sale for August 13, 2012, and (iii) scheduled a hearing to consider approval of the sale for August 15, 2012. (Appellant's Ex. F.)  The auction sale was held on August 13, 2012, at which JG Capital was deemed the successful bidder. (Appellant's Ex. J.)  On August 15, 2012, the Bankruptcy Court conducted a hearing related to the auction sale, at which time it heard any objections to the sale.  On August 22, 2012, the sale order was entered by the Bankruptcy Court approving the sale of the Property pursuant to 11 U.S.C. § 363. (Appellant's Ex. K.)

According to the docket in the Bankruptcy Court, Appellant's counsel was served with notices of all proceedings related to the sale of the Property. See, e.g., In re Ranu Realty Corp., Dkt. Nos. 12, 23, 85, 96, 104, 111, 114.  Despite such notice, Appellant did not object to, appeal, or seek a stay of the Bankruptcy Court's approval of the sale order. (See Dec. 14 Hr'g Tr. 8:14-18, 8:21-24, 9:12-25.)  Appellant now asserts for the first time that, after the February 1, 2012 hearing, she and her attorney "parted company" and she then proceeded *pro se*. (Zavelina Aff., Dec. 17, 2012, ¶ 3.)  Appellant further claims that she attempted to file an order to show cause on February 22, 2012 to obtain a stay of the sale of the Property in Bankruptcy Court but it was never filed. (Id. at ¶¶ 3-6; Appellant's Ex. H (Unsigned Order to Show Cause, Feb. 22, 2012).)  However, Appellant never filed a notice of appearance, (Hr'g Tr., Jan. 15, 2013 ("Jan. 15 Hr'g Tr."), 6:23-7:5), and Appellees were never informed of her counsel's withdrawal from the bankruptcy case. (Id. at 13:20-14:22.)

On October 16, 2012, the Appellate Division issued an order reversing the New York Supreme Court's decision, concluding that it had "erred in finding that a stay was in effect at the

4

time of the foreclosure sale and that the sale was a nullity." <u>Lenders Capital</u>, 99 A.D.3d 566, 566

(N.Y. App. Div. 2012).  In light of this decision, on November 5, 2012, Appellant submitted an

application in the Bankruptcy Court for an emergency order temporarily staying the

consummation of the sale of the Property and for reconsideration and vacatur of the order

approving the sale of the Property pursuant to Federal Rule of Bankruptcy Procedure 9024.

(Appellant's Ex. N.)  The Bankruptcy Court temporarily stayed the consummation of the sale of

the Property pending its ruling on the motion for reconsideration.  <u>In re Ranu Realty Corp.</u>, Dkt.

No. 131 (Bankr. S.D.N.Y. Nov. 5, 2012).  A hearing was held on December 14, 2012, and on

December 21, 2012, the Bankruptcy Court denied Appellant's motion for reconsideration and

lifted the temporary stay.  <u>Id.</u> at Dkt. No. 148 (Bankr. S.D.N.Y. Dec. 21, 2012).

Appellant immediately appealed the Bankruptcy Court's denial of the motion for

reconsideration.  Presently before the Court is Appellant's request for a preliminary injunction to

stay the consummation of the sale of the Property pending her appeal.  Upon considering the

parties' submissions and oral arguments, the Court denies Appellant's motion.

## II.    Discussion

"A preliminary injunction is an extraordinary remedy that should not be granted as a

routine matter."  <u>JSG Trading Corp. v. Tray-Wrap, Inc.</u>, 917 F.2d 75, 80 (2d Cir. 1990).  An

appellant seeking a preliminary injunction must show that: (1) it is likely to succeed on the

merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the

balance of equities tips in its favor; and (4) an injunction is in the public interest.  <u>See</u> <u>Winter v.</u>

<u>Natural Res. Def. Council</u>, 555 U.S. 7, 20 (2008).  The Court assumes that Appellant is likely to

suffer irreparable harm for purposes of this analysis.  Because Appellant cannot demonstrate a

likelihood of success on the merits, however, it does not consider whether she has satisfied the

remaining elements of the preliminary injunction standard.

Appellant is appealing the Bankruptcy Court's denial of her motion for reconsideration of the Bankruptcy Court's order approving the sale of the Property pursuant to Federal Rule of Bankruptcy Procedure 9024. Federal Rule of Bankruptcy Procedure 9024 dictates that Federal Rule of Civil Procedure 60(b) applies to bankruptcy cases. Appellant thus moved for reconsideration pursuant to Rule 60(b)(2), (4), and (5), which provide that:

> [T]he court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . . (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); . . . (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable.

Fed. R. Civ. P. 60(b)(2), (4), (5).

On appeal, a district court reviews a Bankruptcy Court's denial of a Rule 60 motion for an abuse of discretion. In re Teligent, Inc., 326 B.R. 219, 224 (S.D.N.Y. 2005). "A bankruptcy court abuses its discretion when it arrives at a decision that (i) rests on an error of law (such as an application of the wrong legal principle) or a clearly erroneous factual finding, or (ii) a decision that, though not necessarily the product of legal error or a clearly erroneous factual finding, cannot be located within the range of permissible decisions." Schwartz v. Aquatic Dev. Grp., Inc. (In re Aquatic Dev. Grp., Inc.), 352 F.3d 671, 678 (2d Cir. 2003). "The appeal from the denial of a Rule 60 motion 'brings up only the denial of the motion and not the merits of the underlying judgment itself.'" In re Teligent, Inc., 326 B.R. at 224 (quoting Paddington Partners v. Bouchard, 34 F.3d 1132, 1147 (2d Cir. 1994)). Rule 60(b) motions for relief from judgment are "generally not favored and [are] properly granted only upon a showing of exceptional circumstances." United States v. Int'l Bhd. of Teamsters, 247 F.3d 370, 391 (2d Cir. 2001). The decision to grant a Rule 60(b) motion is "committed to the sound discretion of the [bankruptcy]

6

court." <u>Stevens v. Miller</u>, 676 F.3d 62, 67 (2d Cir. 2012).

In denying Appellant's Rule 60(b) motion at a hearing held on December 14, 2012, at which Appellant was represented by counsel, the Bankruptcy Court found that the Appellate Division's decision validating the first auction sale did not affect its order approving the sale of the Property because the Property "was the property of the estate prior to" the New York Supreme Court's decision declaring the first auction sale a nullity and "it surely was property of the estate after that occurring." (Dec. 14 Hr'g Tr. 7:12-14.) The Bankruptcy Court rejected Appellant's argument that, once relief from the automatic stay is granted pursuant to 11 U.S.C. § 362(d), any sales pursuant to 11 U.S.C. § 363 "are subject to relief from stay." (<u>Id.</u> at 12:10-11.) The court explained that "[t]he granting of the relief from the stay in order to enable the appeal to be pursued was ineffective to stay this [c]ourt's disposition of the property, without more. That's why there's provision under the Bankruptcy Code for one to seek a stay in this court." (<u>Id.</u> at 13:5-9.) Rather than seeking a stay of the sale proceedings in the Appellate Division, which the Bankruptcy Court found to be a "clear violation of the automatic stay," (<u>id.</u> at 8:5-6), "it was incumbent on [Appellant] to come to this court and seek a stay of the disposition of the property which . . . was property of the estate and as to which she was asserting a claim." (<u>Id.</u> at 9:16-20, 10:2-5 ("Had [Appellant] wanted to preserve her rights, she had to come to this court because, at that moment, it was property of the estate and subject to my jurisdiction. And nothing happened.").) Finally, the Bankruptcy Court found that Appellant, through counsel, received notice of all aspects of the sale proceedings, but she never objected, appealed or sought to stay the sale of the Property. (<u>Id.</u> at 8:14-18, 8:21-24, 9:12-15.)

In support of the instant motion, Appellant raises several arguments. Before considering each argument, the Court is reminded that its role on appeal is limited to deciding whether the

Bankruptcy Court abused its discretion in denying Appellant's motion for reconsideration; the merits of the underlying decision itself is not before the Court.  See In re Teligent, Inc., 326 B.R. at 224 (quoting Paddington Partners, 34 F.3d at 1147).

### A.    Relationship between 11 U.S.C. § 362 and 11 U.S.C. § 363

First, Appellant argues that the sale of the Property was improper pursuant to 11 U.S.C. § 363(d)(2)—which provides that a trustee may sell estate property "only to the extent not inconsistent with any relief granted under subsection (c), (d), (e), or (f) of section 362"—because it was inconsistent with the Bankruptcy Court's lifting of the stay to permit the state court appeal.  (Appellant's Reply ¶ 38 (quoting § 363(d)(2)), ¶¶ 39-40).)

"The Bankruptcy Code empowers bankruptcy courts to take measures that grant relief from the automatic stay including 'terminating, annulling, modifying, or conditioning' the stay under certain circumstances."  E. Refractories Co. v. Forty Eight Insulations Inc., 157 F.3d 169, 172 (2d Cir. 1998) (quoting 11 U.S.C. § 362(d)).  The decision whether to lift the automatic stay pursuant to § 362(d) is "entirely within the discretion of the Court."  In re Containership Co. (TCC) A/S, 466 B.R. 219, 225 (Bankr. S.D.N.Y. 2012) (citing Sonnax Indus., Inc. v. Tri-Component Products Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280, 1286 (2d Cir. 1990)).  "In deciding whether to lift a stay . . . , a bankruptcy court should consider the particular circumstances of the case, and ascertain what is just to the claimants, the debtor and the estate."  Id. at 226.  "[B]ankruptcy courts have the plastic powers to modify or condition an automatic stay so as to fashion the appropriate scope of relief."  E. Refractories Co., 157 F.3d at 172; see also In re Shared Techs. Cellular, Inc., 293 B.R. 89, 93 (D. Conn. 2003) ("The statutory language clearly grants bankruptcy courts authority to modify or condition the automatic stay, thereby empowering them to shape relief mindful of the particular circumstances of each case.").

Exercising this discretion, the Bankruptcy Court advised Appellant prior to the sale of the Property (at which time she was represented by counsel) that it modified the automatic stay for the purpose of pursuing the state appeal only and not for the purpose of staying the sale of the Property. (Feb. 1 Hr'g Tr. 21:7-24 ("You asked me to lift the stay for the purpose of pursuing the Appeal. That was granted. . . . A request for a stay is an entirely separate matter."); see also Dec. 14 Hr'g Tr. 7:21-8:6 ("[Appellant's counsel] took the position that that was not a violation of the automatic stay and attempted to convince me that when I granted leave for him to pursue the appeal, that was also leave to obtain a stay. That was incorrect.").) See also In re Roxrun Estates, Inc., 74 B.R. 997, 1004-05 (Bankr. S.D.N.Y.1987) (considering whether to lift the automatic stay for the limited purpose of appealing a foreclosure judgment or for all purposes with respect to the litigation and foreclosure proceedings in state court). Appellant was thus on notice of the limited scope of the Bankruptcy Court's modification of the stay and the need to act in Bankruptcy Court to stay the sale.

Appellant acknowledges that the cases that "purport to interpret this statutory language are few and far between," and none can be found in this Circuit. (Appellant's Letter, Jan. 22, 2013, 1.) Although Appellant cites several cases that indicate that the plain meaning of the statutes, when read together, should be adopted, these cases discuss the statutes in dicta or are irrelevant to the underlying proceedings here. At least one case cited by Appellant, Gregory v. Wabeke (In re Gregory), No. 92-C-2343, 1994 U.S. Dist. LEXIS 20066 (D. Colo. May 2, 1994), contradicts her own argument. In Gregory, the district court upheld the bankruptcy court's decision to permit the trustee to sell the debtor's real property despite a lifting of the stay with respect to that property. The court "reject[ed] the notion that termination of stay is analogous to an abandonment of property," and held that "notwithstanding the relief from the stay, the

9

bankruptcy court's jurisdiction of the property continues." Id. at *3.  Appellant has not provided any support for her argument that Gregory is distinguishable from the facts here because the Appellate Division's decision "divest[ed] the [B]ankruptcy [C]ourt of jurisdiction over the property before the consummation of the sale." (Appellant's Letter 3.)  In any event, in light of the discretion afforded to bankruptcy courts in modifying the automatic stay and considering motions for reconsideration, as well as the Court's limited scope of review on appeal, Appellant has failed to demonstrate a likelihood of success on the merits as to this argument.

**B.    Jurisdiction over the Property**

Second, Appellant contends that the Appellate Division's decision divested the Bankruptcy Court of jurisdiction over the Property.  (See Appellant's Letter 3-4; Appellant's Ex. P ¶¶ 14-15 (arguing that the Appellate Division's order had retroactive effect under 11 U.S.C. § 541 and therefore removed the Property from the bankruptcy estate).)  As a result, she claims, the Bankruptcy Court lacked subject matter jurisdiction over the property pursuant to the Rooker-Feldman doctrine.[5] (Appellant Letter 5.)  Appellant, however, has failed to cite any law that supports her position that the Appellate Division's ruling stripped the Bankruptcy Court of jurisdiction.

As the Bankruptcy Court made clear to the parties, the Bankruptcy Court retained jurisdiction over the Property of the estate even after lifting the automatic stay.  (Dec. 14 Hr'g Tr. 10:2-5 ("Had [Appellant] wanted to preserve her rights, she had to come to this court because, at that moment, it was property of the estate and subject to my jurisdiction.").)  See,

---

[5] The Rooker-Feldman doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).  Four requirements must be met before the doctrine may apply: (1) "the federal-court plaintiff must have lost in state court;" (2) "the plaintiff must complain of injuries caused by a state court judgment;" (3) "the plaintiff must invite district court review and rejection of that judgment;" and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005).

e.g., In re Teligent, Inc., 459 B.R. 190, 197 (Bankr. S.D.N.Y. 2011) ("In re Teligent, Inc. II").

At best, the Bankruptcy Court and Appellate Division shared concurrent jurisdiction over the

proceedings that affected the property of the estate.  See Chao v. Hosp. Staffing Servs., Inc., 270

F.3d 374, 383-84 (6th Cir. 2001) ("[I]f the bankruptcy court grants relief from the stay with

respect to certain property or claims, . . . the bankruptcy court retains jurisdiction over those

matters, although its jurisdiction is concurrent with that of other courts of competent

jurisdiction."); In re Teligent, Inc. II, 459 B.R. at 197 ("While the [bankruptcy court] enjoys

exclusive jurisdiction over property of the estate, it only enjoys nonexclusive jurisdiction over

bankruptcy proceedings that may affect property of the estate.").  Because the Bankruptcy Court

retained jurisdiction—even if concurrent with the state court—over the Property, it cannot be

said that the Appellate Division's ruling applied retroactively and automatically divested the

Bankruptcy Court of jurisdiction over the Property, and Appellant has cited no law to the

contrary.  As such, the Rooker-Feldman doctrine appears to be inapplicable because the state

court's judgment was not rendered before the Bankruptcy Court's ruling as to the sale of the

property.  Appellant's argument regarding the Bankruptcy Court's jurisdiction is therefore likely

to fail.

### C.   Appellant's Representation in Bankruptcy Court

Finally, Appellant argues that the Bankruptcy Court abused its discretion in finding that

Appellant failed to seek a stay of the sale proceedings in the Bankruptcy Court.  Appellant

directs the Court's attention to the unsigned order to show cause submitted by Appellant to the

Bankruptcy Court on February 22, 2012, seeking to stay the sale of the Property.  (Appellant's

Ex. H.)  Appellant asserts that, following the February 1, 2012 status conference, she parted

ways with her attorney and decided to proceed *pro se*.  (Zavelina Aff. ¶ 3.)  In this capacity,

Appellant submitted the order to show cause, which was never signed, and thus never docketed for failure to comply with procedural rules for submitting an order to show cause. (Id. at ¶¶ 5-7.)

None of this information, however—neither the existence of the order to show cause nor Appellant's self-representation—is part of the record on appeal, nor was it mentioned in Appellant's motion for reconsideration, for which Appellant was undoubtedly represented by counsel.[6] See In re Bear Stearns High-Grade Structured Credit Master Fund, Ltd., 389 B.R. 325, 339 (S.D.N.Y. 2008) (explaining that if an item was not considered by the bankruptcy court, it should not be part of the record on appeal). Indeed, the order to show cause was docketed on December 18, 2012—four days after the December 14, 2012 hearing on the motion for reconsideration—as an exhibit to Appellant's affidavit in which she explains her effort to proceed *pro se* and file the order to show cause. See In re Ranu Realty Corp., Dkt. No. 143 (Bankr. S.D.N.Y. Dec. 18, 2012). Appellant now argues that, despite the lack of any reference in the bankruptcy record to Appellant's *pro se* status and related effort to obtain a stay, the Bankruptcy Court had actual knowledge of the unsigned order to show cause and reviewed the papers before making its decision on the motion. (Appellant's Reply ¶¶ 21-22(a); Jan. 15 Hr'g Tr. 4-7:21.)

Although the Court is bound by the record before the Bankruptcy Court, it assumes for purposes of this motion that the Bankruptcy Court was indeed aware of Appellant's attempt to file an order to show cause before ruling on the motion for reconsideration. Nonetheless, Appellant has not shown that she is likely to meet her heavy burden of proving that the Bankruptcy Court abused its discretion in denying the motion. Throughout most, if not all of the bankruptcy and state court proceedings, Appellant was represented by counsel. With the

---

[6]Appellant was represented by the same counsel at the December 14, 2012 hearing on the motion for reconsideration as she is today. Appellant was represented by a prior attorney at the February 1, 2012 hearing.

exception of the order to show cause, all of Appellant's submissions were prepared by counsel and she had counsel appear on her behalf at several proceedings, including on the motion for reconsideration. See, e.g., In re Ranu Realty Corp., Dkt. Nos. 12, 23, 85, 96, 104, 111, 114. Appellees had no reason—either from counsel or from Appellant—to believe that Appellant intended to proceed *pro se*. (Jan. 15 Hr'g Tr. 14:16-22, 15:3-11 ("She had an obligation, if she was representing [herself] *pro se*, to follow procedures in the [B]ankruptcy [C]ourt and follow rules, including notifying counsel that she was now represented by herself . . . and she never did that.").)  Her attorney never withdrew from the case, as so required by Local Bankruptcy Rule 2090-1(e) ("An attorney who has appeared as attorney of record may withdraw or be replaced only by order of the Court for cause shown."), and she never formally filed a notice of appearance.

Furthermore, assuming that Appellant did attempt to file the order to show cause, she never did so properly and never attempted to do so again, despite demonstrating an understanding that some action in the Bankruptcy Court was necessary to stay the sale of the Property. (See Appellant's Ex. H at 10, 12 (Zavelina Aff. Supporting Order to Show Cause, Feb. 2, 2012, ¶¶ 34, 45-46).)  Indeed, at the December 14, 2012 hearing on the motion for reconsideration, at which Appellant was present, neither she nor her attorney mentioned Appellant's prior attempt to proceed *pro se* or file an order to show cause in spite of the fact that the Bankruptcy Court declared more than once that she had made "no objection [to and] no appeal" of the sale of the Property. (Dec. 14 Hr'g Tr. 8:22-23, 13:24-25.)  Had Appellant sought to have the Bankruptcy Court consider her failed attempt to file the order to show cause to stay the sale, she or her attorney should at least have said so at that point.

Thus, despite several warnings and opportunities to either seek a stay of the sale of the

motion for reconsideration.

## III.    Conclusion

For the foregoing reasons, it is hereby ORDERED that Appellant's motion for a preliminary injunction is denied.

SO ORDERED.

Dated:        February 15, 2013
              New York, New York

Ronnie Abrams
United States District Judge

14